# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-0262V

| | |
|---|---|
| DAVID STRIKE,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: April 28, 2025 |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Alec Saxe*, U.S. Department of Justice, Washington, DC, for Respondent.

### **FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

  On March 8, 2022, David Strike filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which he amended on January 6, 2023. Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on August 25, 2020. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

  The parties have fully briefed the question of whether Petitioner is entitled to compensation (ECF Nos. 41, 42, 43). For the reasons discussed below, I find that the

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

record does not preponderantly support a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, and therefore I dismiss Petitioner's Table SIRVA claim.

## I. Factual Findings

### A. Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y*

*of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### B. Relevant Factual History

This ruling contains only a brief overview of facts most relevant to the parties' dispute.

#### 1. Medical Records

Petitioner received the vaccine at issue in his left deltoid on August 25, 2020. Ex. 1 at 5-6. A month later (September 24, 2020), Petitioner had lab work done at a "drive up" lab, then messaged his cardiologist asking about the results and a medication. Ex. 7 at 200-08. There is no contemporaneous record evidence of any vaccine-related complaints in this one-month period.

Petitioner also did not seek treatment for his alleged injury at any time in the ensuing three months of 2020. And when he next sought medical assistance - on January 5, 2021 – it was to again message his cardiologist, this time about medication risks. Ex. 7 at 198-99. On the same day, he messaged his primary care physician, Dr. James Kinsman, about a medication change. *Id.* at 196-97. The message was categorized as a "Non-Urgent Medical Question" (although it is not clear who made this characterization). *Id.* None of these records include any reference to Petitioner's left shoulder. On January 19 and February 9, 2021, Petitioner received COVID-19 vaccinations in his right deltoid.

Ex. 15; Ex. 19 at 13-14.

On April 5, 2021 – now over seven months post-vaccination – Petitioner saw Dr. Kinsman, complaining (for the first time in the medical records) of left shoulder pain. Ex. 7 at 163. Petitioner explained that he had received a flu vaccine in late August the year before, and reported that the pharmacist had injected the vaccine two or three centimeters lower than immunizations are usually given. *Id.* He "had no unusual pain right away but *over the next several days* had the onset and worsening of pain," which had persisted for the past seven months. *Id.* (emphasis added). At its worst, he could not lay on his left side at all. *Id.* He had taken to sleeping with his arm hanging off the bed for comfort. *Id.* In the morning, he used his right hand to move his left shoulder through range of motion ("ROM") exercises to maintain his flexibility. *Id.* The record adds that "[h]e mostly came in for documentation of this." *Id.* On examination, Petitioner had "[g]ood range of motion at the left shoulder but with some discomfort." *Id.* at 166. Dr. Kinsman assessed Petitioner with left shoulder pain following flu immunization and recommended that he see an orthopedist given how long the problem had persisted. *Id.* at 163.

Three weeks later, on April 26, 2021, Petitioner was seen by orthopedic nurse practitioner ("NP") Trisha Finnegan. Ex. 4 at 48. The record from this visit states that he reported left shoulder pain that started after vaccination and had persisted for eight months. *Id.* at 49. He rated his pain as ranging between zero and ten out of ten. *Id.* He also complained of weakness, loss of motion, difficulty with daily activities, and pain with movement and sleeping on his left side. *Id.* Shoulder x-rays were normal, but on examination Petitioner's left shoulder exhibited weakness and atrophy, with signs of impingement and bicep pathology. *Id.* However, he had "maintained a fairly functional range of motion with some limitations at end limits of motion in all planes." *Id.* NP Finnegan ordered a shoulder MRI and referred Petitioner to physical therapy ("PT"). *Id.*

Petitioner underwent a left shoulder MRI on May 5, 2021. Ex. 4 at 56. The report states that the MRI was done because "[t]he patient reports worsening pain, since influenza vaccine Aug. 2020." *Id.* The MRI showed rotator cuff tendinosis, suspected areas of partial-thickness tearing, and a small volume of fluid within the subacromial bursa. *Id.* at 57.

Petitioner underwent a PT evaluation for left shoulder pain on May 11, 2021. Ex. 5 at 139. The record lists the date of onset as "chronic" and explains that he had "worsening pain over the past year after receiving an influenza vaccine in 2020." *Id.* at 142. He described ROM limitations that "seem[ed] to be improving with time and passive motion." *Id.* At rest he had no pain, but with sudden movements his pain increased to nine out of ten. *Id.* On examination, his ROM was nearly identical in his left and right shoulders, but his external rotation was 60 degrees and painful on the left, compared to 90 degrees on the right. *Id.* He had positive impingement results on the Hawkins Kennedy test. *Id.* Petitioner continued with additional PT sessions.

Two weeks later (May 26, 2021), Petitioner saw orthopedist Dr. John Pak. Ex. 4 at 25. Dr. Pak reviewed the MRI, which in his view was consistent with at least a partial tear, but on further evaluation he thought showed near full-thickness tearing and delamination of the supraspinatus tendon. *Id.* On examination, his ROM was noted as 170 degrees and "[a]bnormal" in forward flexion and abduction, and 70 degrees and "[a]bnormal" in external rotation. *Id.* Because Petitioner reported improvement in ROM with PT, Dr. Pak recommended that he continue PT. *Id.*

Petitioner returned to Dr. Pak on July 7, 2021, reporting that he was gradually improving. Ex. 4 at 8. He rated his pain as five out of ten. On examination, his left shoulder ROM was noted as "180 deg Abnormal" in forward flexion and abduction – although the record does not explain how this was abnormal, and these measurements are at the high end of what is generally considered normal ROM for adults.[3]

Nearly a year later, on May 2, 2022, Petitioner saw Dr. Kinsman for left shoulder pain. Ex. 18 at 55. The record states that the "purpose of today's visit was to document his current status as I am doing." *Id.* Petitioner reported that he had a flu vaccination on August 25, 2020, and "[w]ithin a day or less" he began having pain in his shoulder. *Id.* The pain worsened in the first week. *Id.* He kept thinking it would improve, but it did not so he saw Dr. Kinsman in April 2021 and then treated with an orthopedist and PT. *Id.* He had "at times excruciating pain in those first 7 to 10 months," but had now improved, with some residual pain and mildly decreased ROM in abduction and internal rotation. *Id.* at 56. The record adds that "[a]ny subsequent vaccines such as COVID ha[ve] been given in his thigh." *Id.*[4] On examination, Dr. Kinsman found that Petitioner's left shoulder ROM "lacks probably 20 degrees of range of motion on the left" in abduction compared to the right, with mild deficits in internal rotation. *Id.*

Petitioner returned to NP Finnegan on June 7, 2022. Ex. 9 at 30. There are two different versions of the record for this appointment. A version sent to Dr. Kinsman on the day of the appointment (June 7th) states that Petitioner sustained left shoulder pain after a *COVID* vaccination in his left arm and that his symptoms began "approximately *1 month after* vaccine administration." *Id.* However, there is another version of the record that appears to have been edited over a month later - at Petitioner's request.[5] *Id.* at 22. This

---

[3] Normal shoulder ROM for adults ranges from 165 to 180 degrees in flexion, 170 to 180 degrees in abduction, and 90 to 100 degrees in external rotation. Cynthia C. Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 88 (F. A. Davis Co., 5th ed. 2016).

[4] Petitioner's January and February 2021 COVID-19 vaccines were given in his right deltoid. Ex. 19 at 13-14. However, the record reflects that he did have several vaccines administered in his thigh thereafter, including his 2021 and 2022 flu vaccines. *Id.* at 12.

[5] Petitioner sent NP Finnegan portal messages requesting corrections to his records (Ex. 9 at 13, 18), and the changes made to the record are consistent with Petitioner's requested changes (although it appears that she did not make all of his requested changes). The edited version of the record has a "filed" date of July 13, 2022. *Id.* at 22.

version states that Petitioner noted pain *the day after* a *flu* vaccination. *Id.* The edited version further states that he delayed seeking care due to COVID, and was "unable to be evaluated by PCP until 6 months post onset." *Id.*

Both versions of the June 7th record indicate that Petitioner had intermittent pain at extremes of motion that he rated four out of ten. Ex. 9 at 22, 31. He was now doing better, but continued to have pain when getting dressed and doing push-ups. *Id.* at 22, 30. NP Finnegan determined that Petitioner had "functional" ROM, and recommended that Petitioner continue his home exercise program, but did not recommend any treatment. *Id.* at 23, 31.

### 2. Declarations

Petitioner filed three declarations in support of his claim.[6] Exs. 12, 13, 14. Petitioner states that he is a retired infectious disease physician, with the last ten years of his practice involving orthopedic infections. Ex. 13 at ¶ 1. The day after he received the flu vaccine, his left shoulder began hurting. *Id.* at ¶ 2. The pain worsened and moved anteriorly by the fourth day. *Id.* He reasoned this was due to inflammation from the vaccine, and adjusted his sleeping position to accommodate his shoulder. *Id.* He began doing ROM exercises, expecting the inflammation to improve over a few months. *Id.* While the acute tenderness improved somewhat, severe night pain and problems with both passive and active ROM persisted. *Id.* Because the shoulder is not a weight-bearing joint, he delayed seeking care, reasoning that he was a physician with some orthopedic experience and that a medical visit during the height of the COVID-19 Pandemic was not appropriate. *Id.*

Petitioner and his family limited most activities, including his previous hobbies of golf, kayaking, and travel, during the months after the onset of his shoulder injury because of his shoulder pain. Ex. 13 at ¶ 2. He still hoped his shoulder would improve; however, by Christmas of 2020, he became alarmed when he noticed the progression of posterior shoulder aching and associated restriction of movement, which he thought suggested a tendon injury. *Id.* He usually went cross-country skiing in the winter, but he avoided it that year due to shoulder pain. *Id.*

Petitioner was able to receive COVID-19 vaccine doses in January and February 2021. Ex. 13 at ¶ 3. By March, he considered himself to have immunity and made an appointment with Dr. Kinsman for his shoulder pain. *Id.*

Debra Strike, Petitioner's wife and a retired registered nurse, filed a declaration in support of his claim. Ex. 14. Petitioner first complained to her of unusual left shoulder pain

---

[6] Although Petitioner labeled these exhibits as affidavits, they are not notarized. Nonetheless, they are acceptable as declarations. 28 U.S.C. § 1746.

while they were travelling on August 29, 2020 – four days after vaccination – when he told her his shoulder began hurting the day after vaccination. *Id.* at ¶ 2. Initially he was unable to sleep on his left side. *Id.* He began to do passive and active ROM exercises to keep his shoulder from stiffening, but the pain worsened nonetheless. *Id.* The pain was particularly bad at night. *Id.* Once Petitioner had received COVID-19 vaccines and waited for immunity to take effect, it took "another month or more" to get an appointment with Dr. Kinsman. *Id.* at ¶ 2.

### C. The Parties' Arguments

Petitioner argues that he experienced the onset of shoulder pain within 48 hours of vaccination. Petitioner's Motion for an Entitlement Ruling on the Record, filed Jan. 17, 2024 (ECF No. 41), at *23-28 ("Mot."). Although he did not seek care for over seven months, at that time he related his pain to vaccination. Mot. at *25. Similarly, he told his orthopedist that his pain began after vaccination, and the MRI report states that he reported pain since his August 2020 vaccination. *Id.*

Petitioner relies also on his testimonial evidence for a finding that his pain began within 48 hours, and reasonably explains his initial treatment delay. Mot. at *23. He emphasizes his statement that his pain began the day after vaccination, worsening not long thereafter. *Id.* And his wife stated that he first complained about shoulder pain four days after vaccination, but that his pain began the day after vaccination. *Id.* at *24.

Petitioner argues that a delay in seeking treatment for a SIRVA is not, by itself, evidence that the onset of pain did not occur within the time set forth in the Table. Mot. at *26. Petitioner cites my decisions in *Cavalier*, *Bergstrom*, and numerous other cases in support of this contention.[7] Mot. at *26. He adds that physicians who delayed treatment have been found entitled to compensation despite treatment delays, citing *Young*.[8] *Id.* Moreover, Petitioner cites decisions acknowledging that many individuals chose to delay care due to the COVID-19 Pandemic.[9] *Id.*

Petitioner also notes that he received the flu vaccine just five months after the Pandemic began. Mot. at *27. His age and medical history placed him at high risk if he were to contract the COVID-19 virus. *Id.* His medical and orthopedic experience allowed

---

[7] *Cavalier v. Sec'y of Health & Human Servs.*, No. 21-0389, 2023 WL 5500404 (Fed. Cl. Spec. Mstr. July 25, 2023); *Bergstrom v. Sec'y of Health & Human Servs.*, No. 19-0784V, 2020 WL 8373365 (Fed. Cl. Spec. Mstr. Dec. 4, 2020).

[8] *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019).

[9] *M.W. v. Sec'y of Health & Human Servs.*, No. 18-0267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021); *Couch v. Sec'y of Health & Human Servs.*, No. 20-1246V, 2022 WL 4453921 (Fed. Cl. Spec. Mstr. Aug. 24, 2022).

him to understand his injury and self-treat. *Id.* And once he began seeking formal care, he regularly related the onset of his pain to vaccination. *Id.* at *28.

Respondent argues that Petitioner has not established a Table SIRVA because he has not demonstrated that his shoulder pain began within 48 hours of vaccination. Respondent's Response, filed Mar. 18, 2024 (ECF No. 42) ("Resp."), at *14-23. In Respondent's view, "the contemporaneous medical records, coupled with petitioner's significant delay in reporting his symptoms, belie his contention" that his pain began the day after vaccination. Resp. at *14.

Respondent asserts that if Petitioner had truly been experiencing severe and functionally limiting pain since late August 2020, it is difficult to understand why he waited nearly eight months to seek care. Resp. at *15. Respondent also asserts that the cases relied on by Petitioner involve petitioners who sought care for shoulder injuries within six months of vaccination – much sooner than Petitioner. *Id.* at *15-16.

Respondent views this case as more similar to *McCarthy*.[10] That petitioner did not seek care for nearly eight months – a timeframe deemed long enough to undermine her onset contentions. *Id.* Petitioner's argument that he delayed seeking care due to the Pandemic is undermined by the fact that he was seen in person in August 2020 for routine lab work.[11] *Id.* at *16-17. And Petitioner could have participated in a telemedicine visit, or called or messaged Dr. Kinsman. *Id.* at *17. In fact, Petitioner sent Dr. Kinsman – the provider who ultimately treated Petitioner's shoulder – a "Non-Urgent Medical Question" in January 2021, but without mentioning his left shoulder. *Id.* at *17-18. Respondent views Petitioner's failure to mention his shoulder symptoms prior to April 2021, despite having the opportunity to do so, as undermining his claim that his pain began the day after vaccination. *Id.* at *18 (citing *Small*, *Rose*).[12]

Respondent emphasizes that Petitioner's treatment delay was *coupled with* opportunities to seek treatment – a different matter than a treatment delay alone. Resp. at *19 (citing *Stryski*).[13] Respondent argues that the most contemporaneous medical

---

[10] *McCarthy v. Sec'y of Health & Human Servs.*, No. 21-0425V, 2023 WL 9063678 (Fed. Cl. Spec. Mstr. Nov. 29, 2023).

[11] Respondent cites messages Petitioner sent to Dr. Kinsman's office in August 2020 asking about a drive-up lab. Resp. at *16-17 (citing Ex. 7 at 206-08). It appears that the lab results were issued in late September 2020. Ex. 7 at 204. Thus, it is somewhat unclear whether the lab work was done in August or September 2020; I find for purposes of this motion it does not matter which is correct.

[12] *Small v. Sec'y of Health & Human Servs.*, No. 15-478V, 2019 WL 6463985 (Fed. Cl. Spec. Mstr. Nov. 1, 2019); *Rose v. Sec'y of Health & Human Servs.*, No. 20-0056V, 2022 WL 4128908 (Fed. Cl. Spec. Mstr. Aug. 10, 2022).

[13] *Stryski v. Sec'y of Health & Human Servs.*, No. 20-1177V, 2022 WL 17820775 (Fed. Cl. Spec. Mstr. Oct. 17, 2022).

records "make generalized references to petitioner's shoulder pain beginning after vaccination without specifying a more precise onset." *Id.* Although Petitioner attributed his pain to vaccination, this supports a finding that he more likely than not experienced pain at *some time* after vaccination – but not necessarily within 48 hours thereafter. *Id.* at *20 (quoting *Bulman*).[14]

Respondent adds that the fact that Petitioner requested changes to his June 2022 medical record "seemingly for the purposes of litigation" undermines his credibility. Resp. at *20-21. For this reason, Respondent asks that I rely on the contemporaneous unaltered medical records – which contain only generalized reference to pain after vaccination, without specifying a precise onset – and reject his testimonial evidence. *Id.* at *20-22.

Petitioner replies that *McCarthy* is not comparable because, although that case involved a treatment delay of similar duration, the *McCarthy* petitioner stated that her pain had been present since over a *month* after vaccination when she first sought care. Petitioner's Reply, filed Apr. 12, 2024 (ECF No. 43) ("Reply"), at *2-3. And she later continued to report onset well after vaccination, without relating her pain to vaccination. *Id.* In contrast, Dr. Strike consistently related his pain to vaccination, and was not seen for any in-person medical visits between January 31, 2020 and April 5, 2021. Reply at *4. Although Petitioner had overdue lab work done in the summer of 2020, he specifically sought out a drive-up lab to minimize exposure. *Id.* at *4-5. And Petitioner did not seek a telemedicine visit because he is a physician and was able to self-treat. *Id.*

Petitioner adds that there is no record evidence suggesting an alternative onset that is outside of the 48-hour timeframe. Reply at *7. He takes issue with Respondent's suggestion that this case is comparable to cases with delayed treatment combined with opportunity for treatment, asserting that the cases Respondent cites involve petitioners with intervening *in-person medical visits* – very different from Dr. Strike's portal messages. *Id.* at *6. Petitioner disagrees that his request to have his June 2022 medical record corrected undermines his credibility, arguing that he was within his rights to request that inaccurate records be corrected. *Id.* at *9-10. Petitioner cites state and federal publications allowing patients to seek corrections of incorrect information in medical records. *Id.* at *8-9.

Alternatively, Petitioner seeks a ruling that he is entitled to compensation for an off-Table claim pursuant to *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005), although his amended petition did not assert such a claim (nor did the petition filed at the outset of the case). Mot. at *30-34. Petitioner asserts that SIRVA is a recognized on-Table injury, satisfying the first *Althen* prong. *Id.* at *30-31. He argues that the records of his treating physicians support a logical sequence of cause and effect

---

[14] *Bulman v. Sec'y of Health & Human Servs.*, No. 19-1217V, 2021 WL 4165349 (Fed. Cl. Spec. Mstr. Aug. 12, 2021).

between his vaccination and SIRVA, meeting the second prong. *Id.* at *31-33. As to the third prong – a showing of a proximate temporal relationship between vaccination and injury – Petitioner simply re-asserts his claim that his pain occurred within 48 hours, thus meeting this prong. *Id.* at *33.

### D. Factual Finding Regarding Onset

A careful review of the full record does not allow the conclusion that onset of Petitioner's shoulder pain occurred within 48 hours of vaccination.

First, I note that Petitioner did not seek care for his shoulder until *seven and a half months after* vaccination – and when he did, he reported "no unusual pain right away," with onset of pain "over the next several days." Ex. 7 at 163. This lengthy delay, combined with his report of non-immediate pain, suggests an onset occurring *beyond* 48 hours. This first documentation of onset deserves some degree of weight – and it does not support Petitioner's contention.

Second, Petitioner's explanations to justify either his delay or failure to report pain sooner are not persuasive. It is evident that Petitioner did not mention shoulder pain when he messaged Dr. Kinsman – from whom he ultimately sought care months later – in January 2021, but could have done so. Moreover, I do not give the Pandemic the kind of weight in justifying delay that I have in other cases (where treatment delay coincides or overlaps with its start, in March 2020). And while Petitioner's desire to avoid unnecessary risk of COVID-19 exposure in 2021 has some validity, it remains the case that significant pain could have been addressed in some manner in this timeframe.

In addition, I note that two of Petitioner's medical records state that he sought care to *document his condition* – apparently for purposes of litigation. Importantly, his *very first medical appointment* - which occurred *seven and a half months after vaccination* – notes that his reason for coming in was for just this kind of documentation. Ex. 7 at 163. The fact that a petitioner seeks documentation for litigation purposes does not conclusively establish that the information in those records is inaccurate, but it does raise concerns about how much evidentiary weight should be given to them. *See Crittenden v. Sec'y of Health & Human Servs.*, No. 21-0215V, 2024 WL 5261958, at *9 (Fed. Cl. Spec. Mstr. Nov. 21, 2024) (giving less weight to record of appointment that occurred during litigation, inferring that the visit was aimed at least partly at bulwarking the claim).

There is also the fact that Petitioner's statements to providers about the onset of his pain became more specific – and more aligned with onset consistent with a Table SIRVA – in *later*, less contemporaneous, medical records relating to consultations that he sought out *during litigation* specifically to document his condition. Furthermore, he requested the amendment of one of these records in a way that bolstered his litigation position. Although I do not find that Petitioner likely requested the changes with any improper intention, the fact that Petitioner sought care *during litigation* – and requested

10

amendments to those records that had the effect of bolstering his litigation position – makes these records less compelling. *See Bodak v. Sec'y of Health & Human Servs.*, No. 19-2019V, 2022 WL 6956889, at *5 (Fed. Cl. Spec. Mstr. Sept. 8, 2022) (dismissing Table SIRVA claim and directing Petitioner to show cause why off Table claim should not be dismissed where Petitioner did not report immediate onset of pain following vaccination at initial treatment appointments, but did so months later while noting the existence of pending litigation).

Petitioner suggests that his employment as a medical professional should be taken into account. Physicians who delay seeking care, he notes, can nonetheless be found entitled to compensation, citing *Young*.[15] However, the treatment delay in *Young* was not only somewhat shorter, but that case involved none of the other factors discussed above.

Finally, Petitioner contends that there are no records suggesting a different onset period – but this is incorrect. The very first medical treatment record (from April 2021) is at best ambiguous about onset, if not substantiating one that began more than two days post-vaccination, Ex. 7 at 163. Moreover, at Petitioner's May 2021 PT evaluation, he reported worsening pain *over the past year* – which could suggest that his pain began *before* vaccination. Thus, while Petitioner is correct that this case differs somewhat from *McCarthy* (where a first treatment record suggested onset over a month after vaccination), the delay in initial treatment plus the dearth of medical records stating that the onset of pain occurred within 48 hours are in combination fatal to a favorable onset determination. *McCarthy,* 2023 WL 9063678, at *7.

## II.     Off-Table Claim

Petitioner has yet to formally assert a causation-in-fact version of this claim, but in briefing he seeks to pursue this in the alternative. Admittedly, there are records that could suggest that Petitioner suffered shoulder pain *at some point* after vaccination – though they are far from conclusive. Petitioner sought care just under two months after being fully vaccinated against COVID-19, and related his pain to his 2020 vaccination. Ex. 7 at 163. Once he began seeking care, he consistently related his pain to vaccination (though not with much specificity initially). Ex. 4 at 48; Ex. 5 at 142. He had deficits in ROM, although they appear to be quite mild.[16] Ex. 5 at 142. He had positive findings on his MRI. Ex. 4 at

---

[15] *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2018 U.S. Claims LEXIS 390 (Fed. Cl. Spec. Mstr. Jan. 10, 2018).

[16] At his PT evaluation, he had deficits in left shoulder external rotation. Ex. 5 at 142. Although Petitioner's orthopedist labeled his ROM in flexion and abduction "[a]bnormal," the rationale for this is unclear, given that the numbers were within ranges considered normal. Ex.4 at 8, 25.

58. At best, these records could demonstrate a very mild injury, as compared to similar injuries in the Vaccine Program.

Nevertheless, Petitioner's arguments in support of an off-Table claim largely duplicate his arguments concerning his Table claim. Importantly, his argument on the third *Althen* prong – the showing of a proximate temporal relationship between vaccination and injury – consists of two sentences simply reasserting his position that he experienced shoulder pain, in addition to reduced ROM, within 48 hours of vaccination – a claim I have rejected as unsupported by the evidence. The cases he cites involve initial treatment delays that are far shorter than the delay in this case. And the same factors discussed above also suggest such a claim would not succeed.

I will allow Petitioner to demonstrate how such a version of this claim could succeed – but he must articulate some kind of claim that could "work," or risk complete dismissal of this Petition. To do so, he should file any such evidence that may exist but is not yet part of the record, or provide other argument (perhaps based on prior Program determinations) demonstrating that such a lengthy post-vaccination onset could still support a viable claim.

## Conclusion and Show Cause Order

Because Petitioner cannot preponderantly establish that the onset of his symptoms occurred within 48 hours of vaccination, his Table SIRVA claim cannot proceed and is dismissed. Petitioner shall also show cause, on or before **Monday, June 30, 2025,** why the Petition overall should not be dismissed (for inability to prove a causation-in-fact claim). Respondent may react to Petitioner's filing by **Thursday, July 31, 2025.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
